UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSTALLIT, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD,<br><br>    Defendant. | Case No. 16-cv-01514-TEH<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAYING CASE** |

This matter came before the Court on September 19, 2016 for a hearing on Defendant's motion to compel arbitration. After carefully considering the parties' written and oral arguments, the Court now GRANTS Defendant's motion and hereby STAYS Plaintiff's claim pending completion of arbitration.

**BACKGROUND**

Plaintiff Installit Inc. ("Installit") is a California corporation and employer in the business of installing pre-fabricated doors and cabinets in the San Francisco Bay Area. Compl. ¶ 4. Defendant Carpenters 46 Northern California Counties Conference Board ("Carpenters" or "the Union") is a labor organization with its principal place of business in Oakland. *Id.* ¶ 5.

Installit has been a signatory to a collective bargaining agreement with Carpenters since its formation as a company in 1993. *Id.* ¶ 15. The latest iteration of that agreement was the 2011 Carpenters Master Agreement for Northern California ("2011 Agreement"), which provided in part:

> The Agreement shall remain in full force and effect from the 18th day of May, 2011 through the 30th day of June, 2015, and shall continue thereafter unless either party, not more than ninety (90) days nor less than sixty (60) days prior to the 30th

day of June, 2015 … serves written notice on the other of its desire to … extend or terminate this Agreement.

2011 Agreement § 2 (Ex. C to Imus Decl.). The parties agree that the terms of the 2011 Agreement were in effect when on April 15, 2015 Carpenters sent Installit a notice of termination. Compl. ¶ 15. They dispute whether between April 15 and June 30, 2015 they were bound by an additional agreement. Installit claims that it had become a signatory to the 2014 Master Agreement ("2014 Agreement") with Carpenters, which went into effect on July 1, 2014 and was to expire on June 30, 2019. Compl. ¶ 15. The Union claims that it had negotiated an agreement for the period of 2014 to 2018 with other employers and that Installit never became a signatory to that agreement. Mot. at 2.

Between June 15th and June 30th, 2015, the parties entered into negotiations over a successor agreement. Compl. ¶ 16. During those negotiations, Installit alleges that Carpenters' representatives insisted that Installit would not be accepted as a signatory unless B-K Mill, a third-party neutral employer, became a signatory and joined the Union. Compl. ¶¶ 15-17. B-K Mill is a non-union manufacturer of cabinets and doors. Mot. at 3.

On June 30, 2015, Carpenters sent Installit a Notice of Impasse and a letter declaring that Installit "is no longer bound to the Carpenters Master Labor Agreement for Northern California." Compl. ¶ 17. As a result of the termination, Installit allegedly lost all of its contracts with manufacturers, terminated its employees and ceased doing business. *Id.* ¶ 1. Installit's loss of employees caused the Carpenters Pension Trust Fund for Northern California to assess Installit over $1.4 million in withdrawal liability. *Id.*

Plaintiff claims that Defendant violated Section 8(b)(4) of the Labor Management Relations Act ("LMRA"), 29 U.S.C.A. § 158(b)(4), when it terminated Installit for the purpose of pressuring another employer, B-K Mill, to enter into a collective bargaining agreement with the Union. Compl. ¶¶ 21-22. This conduct, Plaintiff alleges, constitutes an unfair labor practice and gives rise to a cause of action for damages under Section 303 of the LMRA, 29 U.S.C.A. § 187. *Id*. Plaintiff seeks declaratory relief, compensatory damages, punitive damages, costs and attorneys' fees. Compl. ¶ 3.

Defendant denies most allegations and raises a number of affirmative defenses, including but not limited to: the arbitrability of Plaintiff's claim, a statute of limitations bar, and failure to exhaust remedies available through the National Labor Relations Board. Answer at 4.

Defendant seeks to compel arbitration on the basis that the 2011 Agreement requires arbitration of Plaintiff's statutory claim. Mot. at 2. Section 51 of the 2011 Agreement includes a grievance and arbitration procedure leading to final and binding arbitration of "**any dispute concerning any application or interpretations of this Agreement**." 2011 Agreement § 51 (emphasis added). Section 7 sets a procedure for resolving disputes following a notice of termination:

> The Employer … specifically agrees that the permanent neutral Arbitrator may order … the parties to bargain in good faith for any period following a written notice of termination of this Agreement unless and until a lawful impasse occurs or until a successor Agreement is negotiated.

2011 Agreement § 7 (Ex. C to Imus Decl.).

Before the Court is Defendant's motion to compel arbitration, filed on August 11, 2016.

**LEGAL STANDARD**

**I.    The Federal Arbitration Act ("FAC")**

The Federal Arbitration Act applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C.A. § 2. Section 4 of the FAA ensures that "private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Accordingly, a party to an arbitration agreement can petition a United States District Court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C.A. § 4. Additionally, the FAA contains a mandatory stay provision. *Id*. § 3.

3

1    Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. § 2. "[T]he FAA's purpose is to give preference (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013). Nonetheless, arbitration "is a matter of consent, not coercion." *Volt*, 489 U.S. at 479. In accordance with this principle, the Supreme Court has held that parties may agree to limit the issues subject to arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc*., 473 U.S. 614, 628 (1985).

"The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt Dev., LLC*, 55 Cal. 4th 223, 236 (2012). Furthermore, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (internal citations omitted).

## II.   Section 301(a) of the Labor Management Relations Act ("LMRA")

A union may bring an action under Section 301 of the LMRA for specific enforcement of an agreement to arbitrate. 29 U.S.C.A. § 185; *see Textile Workers Union of Am. v. Lincoln Mills of Ala*., 353 U.S. 448, 458 (1957). The question of whether a dispute is arbitrable is one for the court to decide based on the language of the contract. *See AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). Where a labor agreement contains an arbitration clause, there is a presumption in favor of arbitrability of disputes arising between the parties to the agreement. *Id*. at 650. This presumption furthers the strong national policy favoring arbitration of labor disputes. *Id*. at 650-51. A court must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute," and "doubts should be resolved in favor of coverage." *Id*. at 650.

4

**DISCUSSION**

Defendant brings the present motion under the Federal Arbitration Act, 9 U.S.C.A. § 1 *et seq.*, and Section 301 of the LMRA, 29 U.S.C.A. § 185(a). The Court finds that both legal regimes necessitate arbitration of Plaintiff's claim.

**I.     The FAA Requires Arbitration of Plaintiff's Claim.**

In ruling on a motion to compel arbitration under the Federal Arbitration Act, a district court's inquiry is two-fold. The court decides "whether a valid agreement to arbitrate exists; and if it does, whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000)). "If the response is affirmative on both counts, the [FAA] requires the court to enforce the arbitration in accordance with its terms." *Chiron*, 207 F.3d at 1131.

Here, the Court need not engage in the first part of the analysis. Plaintiff concedes that a valid and enforceable agreement existed between the parties at the time of the dispute. Between April 15, 2015 and June 30, 2015, the parties were bound by the arbitration provisions of the 2011 Agreement.[1] Neither the validity nor the substance of those provisions is disputed.

Plaintiff argues that even though it was bound by an agreement to arbitrate, its statutory tort claim under Section 303 of the LMRA falls outside the scope of this agreement. Opp'n at 2. First, Plaintiff alleges that the parties did not intend to arbitrate statutory claims since they did not include language to that effect in the agreement. *Id.* at 8-9. Second, Plaintiff explains that its "entire case against Carpenters is based on the allegation that Carpenters terminated its 2014 Master Agreement with Installit as part of the Carpenters' campaign to coerce … B-K Mill into becoming a signatory." *Id.* at 2. This

---

[1] Plaintiff's allegation that there was another agreement in effect between the parties—the 2014 Agreement—does not have a bearing on the present analysis. Plaintiff does not argue that there is a difference in the language or the scope of the arbitration provisions of the 2011 Agreement and alleged 2014 Agreement.

5

conduct, Plaintiff claims, constitutes an "illegal secondary activity" in violation of Section 8(b)(4)(ii)(A) of the LMRA. *Id*. According to Plaintiff, whether or not Carpenters committed an unfair labor practice does not require interpretation of the 2011 Agreement and thus does not fall within the parties' agreement to arbitrate. *Id*. at 4-8. Lastly, Plaintiff questions an arbitrator's expertise in adjudicating a Section 303 claim. *Id*. at 8.

Defendant contends that arbitration is not precluded in situations where a party asserts a violation of a federal statute. Reply at 2. To the contrary, arbitration is compelled as long as the parties' agreement reaches the statutory issues and there is no congressional command overriding the FAA's mandate to compel arbitration. *Id*. Defendant argues that the parties' agreement to arbitrate encompasses Installit's statutory claim because the factual allegation underlying the claim—Carpenters' termination of Installit for an unlawful purpose—touches matters in the 2011 Agreement. *Id*. at 5. Lastly, Defendant asserts that the expertise, or lack thereof, of a labor arbitrator is irrelevant to the question of whether a court or an arbitrator should decide the merits of Plaintiff's claim. *Id*. at 12.

As discussed below, the Court finds that Plaintiff has not met its burden of proving that the statutory claim at issue is unsuitable for arbitration.

**1. Statutory Claims Are Arbitrable Even Where an Arbitration Agreement Does Not Explicitly State So.**

Plaintiff asserts that its tort claim does not lend itself to arbitration because it arises out of a violation of a federal statute, namely Section 8(b)(4) of the LMRA, 29 U.S.C.A. §§ 158(b)(4). Plaintiff relies on Section 303(b) of the LMRA for the proposition that resolution of the present dispute is only proper in federal court. Opp'n at 2-3.

Section 303(a) does provide that a party injured by an unfair labor practice, in violation of Section 303(a), "may sue therefor in any district court of the United States." 29 U.S.C.A § 187. However, the fact that Section 303 establishes a right to sue for damages resulting from an unfair labor practice does not mean that federal courts retain exclusive jurisdiction over those suits. To the contrary, the Supreme Court in *Mitsubishi*

6

stated in no uncertain terms that there is no reason to depart from the federal policy favoring arbitration where a party bound by an arbitration agreement raises claims founded on statutory rights. *Mitsubishi*, 473 U.S. at 626, 628 (explaining that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."); *see Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (noting that the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights.") In the decades following *Mitsubishi*, courts have consistently enforced arbitration agreements for claims arising under federal statutes. *See e.g., CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 673 (2012) (enforcing an arbitration agreement for claims under the Credit Repair Organizations Act); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (enforcing an agreement to arbitrate claims under the Age Discrimination in Employment Act).

Plaintiff next suggests that the Court must find language in the arbitration agreement showing the parties' intent to arbitrate statutory claims. Plaintiff relies on *Old Dutch Farms* for the proposition that "absent a clear, explicit statement" in the agreement that parties intended to arbitrate tort claims, it must be assumed that they did not. Opp'n at 8-9; *Old Dutch Farms, Inc. v. Milk Drivers & Dairy Emp. Local Union No. 584, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 359 F.2d 598, 603 (2d Cir. 1966). This is simply not the law. Since *Old Dutch*, the Supreme Court has repeatedly held that statutory claims may be the subject of arbitration agreements even where those agreements do not contain "a clear, explicit statement" to that effect. *See e.g., Gilmer*, 500 U.S. at 26; *Mitsubishi*, 473 U.S. 614, 625-27. The Second Circuit itself has disavowed Plaintiff's reading of *Old Dutch*. *See Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machines, Local Union No. 550, Int'l Bhd. of Teamsters*, 167 F.3d 764, 769 (2d Cir. 1999) (declining to follow *Old Dutch*'s requirement of a "clear and explicit statement").

Given that statutory claims can be resolved through arbitration even where an agreement to arbitrate does not explicitly state so, the Court turns to the key question in this proceeding—whether the arbitration provisions of the 2011 Agreement reach or encompass Plaintiff's Section 303 claim.

### 2.   The Parties' Arbitration Agreement Reaches the Statutory Issue.

Courts must enforce valid arbitration agreements even when a party has raised a federal statutory claim if the "agreement to arbitrate reache[s] the statutory issues" and if Congress has not evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. *Mitsubishi*, 473 U.S. at 628; *see Gilmer*, 500 U.S. at 26. The arbitration agreement reaches or encompasses the statutory claim when the factual allegations underlying that claim "touch matters" covered by the agreement containing the arbitration clause. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999*)*. The question here is not whether the arbitration agreement explicitly mentions unfair labor practices or any other statutory claims for relief but "whether the factual allegations underlying [the claim] are within the scope of the arbitration clause whatever the legal labels attached to those allegations." *Mitsubishi*, 473 U.S. at 622 n. 9.

#### (a)  The Scope of the Parties' Arbitration Agreement is Broad.

To determine whether the agreement to arbitrate encompasses Plaintiff's claim, the Court must first ascertain the scope of the arbitration clause by analyzing its plain language. *See Simula*, 175 F.3d at 720-21. Here, the parties have agreed to arbitrate "any dispute concerning any application or interpretations of this Agreement." 2011 Agreement § 51.

Plaintiff argues that the scope of this arbitration clause is narrow and does not reach its allegation of an unfair labor practice. Reply at 4. Plaintiff asks the Court to distinguish the present clause from the arbitration clause at issue in *Interstate Brands*, which covered disputes arising from "any act or conduct between the parties." *Id*. at 5; *Interstate Brands*

Corp, 167 F.3d at 765. The arbitration clause here could be narrower that the clause in *Interstate Brands* and it could still be broad enough to reach Plaintiff's claim.

Multiple courts have interpreted broadly arbitration clauses similar to the one here and have ordered arbitration of statutory claims pursuant to those clauses. In *Simula*, the Ninth Circle interpreted broadly an arbitration clause covering "all disputes arising in connection with [an] agreement" between an inventor of air bag systems and a supplier of components. *Simula*, 175 F.3d at 720-21 (ordering arbitration of plaintiff's antitrust, trademark, trade secret and defamation claims). In *Mediterranean Enterprises*, the Ninth Circuit found a clause requiring arbitration of "any disputes arising hereunder the Agreement" to be more narrow than a clause requiring arbitration of disputes "relating to" an agreement. *Mediterranean Enterprises, Inc. v. Ssangyong Corporation*, 708 F.2d 1458, 1464 (9th Cir. 1983). In *Coors Brewing*, the Tenth Circuit ruled that an arbitration clause covering "any dispute arising in connection with the implementation, interpretation or enforcement" of an agreement was sufficiently broad to cover antitrust disputes between the parties. *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1515 (10th Cir.1995).

Given the Supreme Court's admonition that "ambiguities as to the scope of the arbitration clause [be] resolved in favor of arbitration," the Court is bound to interpret the scope of the parties' arbitration agreement liberally. *Volt*, 489 U.S. at 468. Disputes "concerning any application or interpretations" of the agreement between Installit and Carpenters are analogous to disputes "arising in connection" with an agreement, as in *Simula*, and disputes "relating to" an agreement, as discussed in *Mediterranean Enterprises*. *Compare* 2011 Agreement § 7, *with Simula*, 175 F.3d at 720-21, *and Mediterranean Enterprises*, 708 F.2d at 1464. The Court therefore finds that the arbitration clause in Section 51 of the 2011 Agreement lends itself to broad interpretation and could, depending on Plaintiff's allegations, encompass a statutory claim.

**(b) Plaintiff's Factual Allegations Touch Matters Covered by the 2011 Agreement.**

To require arbitration, Plaintiff's factual allegations "need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula*, 175 F.3d at 721. Accordingly, the Court will examine the factual allegations raised and whether those could be resolved without any reference to matters within the 2011 Agreement.

Plaintiff has made the following factual allegations: Carpenters unilaterally and without cause terminated Installit as a signatory to the Agreement (Compl. ¶ 21); Carpenters "improperly declared an impasse in negotiations with Installit" (*Id*. ¶ 1); those actions were committed for the purpose of pressuring B-K Mill to enter into a collective bargaining agreement with Carpenters (*Id*.; Opp'n at 2); "the only reason Carpenters ever gave Installit for not accepting Installit as a signatory to the 2014 Master Agreement was that B-K Mill did not agree to become a signatory as well" (Compl. ¶ 17, Opp'n at 2); Carpenter's termination caused Installit to lose contracts and suffer damages (Compl. ¶ 1). Those allegations, Plaintiff asserts, do not concern the application or interpretation of the agreement and thus do not come within the scope of the arbitration agreement. Opp' at 2.

Neither Plaintiff's argument nor the authorities upon which Plaintiff relies are persuasive enough to carry its burden under the FAA. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.") To begin with, Plaintiff's reliance on *Old Dutch Farms*, a Second Circuit case from 1966, is misguided. *See Old Dutch*, 359 F.2d at 600-02. Plaintiff argues that because the arbitration clause in *Old Dutch* is similar to the arbitration clause here and the *Old Dutch* court found the employer's Section 303 claim non-arbitrable, the Court should do the same here. Opp'n at 4-6. Not so. *Old Dutch* is factually distinguishable and legally not binding.

In *Old Dutch*, plaintiff Old Dutch Farms alleged that defendant union had engaged in an unfair labor practice by inducing employees of a neutral employer, a supplier of Old

1    Dutch Farms, to engage in work stoppages in an effort to pressure the neutral employer to
2    stop doing work with Old Dutch Farms. *Id*. at 600-01. Because the determination of
3    whether the union had engaged in an unlawful labor practice did not depend on the
4    provisions of the contract between Old Dutch and the union, the court held that plaintiff's
5    claim fell outside the agreement to arbitrate. *Id*. at 601. While the alleged conduct in *Old*
6    *Dutch* was independent from the contractual relationship between the parties, the same is
7    not true here.

8    In *Old Dutch*, the basis of plaintiff's claim was the union's conduct against a third
9    party neutral employer, which could be resolved without reference to the agreement
10   between Old Dutch and the union. *Id*. In contrast here, the basis of Plaintiff's claim is the
11   union's conduct against Installit—its termination for an unlawful purpose from the 2011
12   Agreement—which cannot be resolved without inquiring into Carpenter's purpose for
13   terminating Installit and thus without interpreting terms of the agreement. In addition, *Old*
14   *Dutch* was decided five decades ago, before courts began imposing a very liberal federal
15   policy favoring arbitration agreements. *See Moses H. Cone Mem. Hosp*., 460 U.S. at 24-25
16   ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning
17   the scope of arbitrable issues should be resolved in favor of arbitration, whether the
18   problem at hand is the construction of the contract language itself or an allegation of
19   waiver, delay, or a like defense to arbitrability.")

20   Plaintiff next argues that the Union attempted to bring the dispute into the purview
21   of the arbitration clause by raising defenses based on provisions of the 2011 Agreement.
22   Plaintiff relies on *Limbach* for the argument that because the Union's defenses under the
23   agreement are irrelevant to the question of whether the Union committed an unfair labor
24   practice in violation of Section 303, the Union's defenses do not bring the current dispute
25   within the scope of the arbitration clause. Opp'n at 6-8. The holding of *Limbach* does not
26   extend this far. *See Limbach v. Sheet Metal Workers Intern. Ass'n, AFL-CIO*, 949 F.2d
27   1241 (1991).

28   In *Limbach*, the Third Circuit held that the right of a union to terminate an employer

11

within the terms of the collective bargaining agreement does not allow it to terminate an employer for an unlawful purpose. *Id*. at 1252-53. The defendant union claimed that its act of walking away from a bargaining relationship could not, as a matter of law, constitute coercion with the meaning of Section 8(b)(4)(ii) of the LMRA because the union had a right to disclaim a Section 8(f) agreement. *Id*. at 1250. In ruling against the union, the court reiterated the well-known legal principle that "an action normally lawful may be unlawful if undertaken to accomplish a forbidden objective." *Id*. at 1252. There is no doubt here that the Union could be held liable under Section 303 of the LMRA if it did, in fact, terminate Installit for the purpose of coercing B-K Mill into entering into a collective bargaining relationship with the Union. But *Limbach* simply does not address the question of whether an arbitrator or a federal court should resolve the issue of liability where, as here, the parties had entered into a binding arbitration agreement.

At oral argument, Plaintiff reiterated that its claim for damages arises out of the Union's conduct in terminating Installit for the purpose of pressuring B-K Mill to join the union, an unfair labor practice in violation of Section 8(b)(4)(ii)(A) of the LMRA. Plaintiff contends there is nothing about its claim that requires an application or interpretation of the 2011 Agreement. Opp'n at 2. This could be true if the factual basis for the unlawful conduct was, in fact, wholly independent from the parties' contractual relationship, as it perhaps was in *Old Dutch*. *See Old Dutch*, 359 F.2d at 600-03. But here, the basis for the alleged violation is the Union's conduct in terminating Installit for an unlawful purpose, not its conduct with respect to other employers. Whether the termination was done for an unlawful purpose, in turn, touches matters within the agreement. Sections 2, 6, 7, 33 and 50 of the 2011 Agreement are implicated not because they determine the outcome of Plaintiff's claim, but because they are relevant to the resolution of that claim.

In sum, the Court finds that the factual allegations underlying Plaintiff's claim concern the reasons behind Carpenter's termination of Installit and thus touch matters in the agreement. Provided that "the standard for demonstrating arbitrability is not high," *Simula*, 175 F.3d at 719, and that the Court is required to resolve doubts as to the scope of

12

arbitrable issues in favor of coverage, the Court holds that the arbitration agreement between Installit and Carpenters reaches and encompasses Installit's statutory claim.

### 3. Plaintiff Has Not Met Its Burden Demonstrating Congressional Intent to Preclude Arbitration of Section 303 Claims.

Upon finding that an arbitration agreement encompasses the statutory claim, courts will order arbitration unless the party opposing arbitration can show that Congress intended to preclude a waiver of judicial remedies for the statutory claim at issue. *See Gilmer*, 500 U.S. at 26; *see also McMahon*, 482 U.S. at 227.

Plaintiff has brought to the Court's attention no evidence of congressional intent to bar arbitration of Section 303 claims. Plaintiff relies entirely on the language of Section 303(b), which allows a party to bring a case in federal court for damages suffered as a result of an unfair labor practice. Opp'n at 3; 29 U.S.C.A. § 187(b). But the Supreme Court squarely rejected the argument that the mere creation of a cause of action is sufficient to demonstrate congressional intent to preclude arbitration. *See Greenwood*, 132 S. Ct. at 670 ("If the mere formulation of the cause of action in this standard fashion were sufficient to establish the 'contrary congressional command' overriding the FAA…, valid arbitration agreements covering federal causes of action would be rare indeed. But that is not the law.") (internal citations omitted). Thus, absent evidence in the statute's text or legislative history that Congress intended to preclude a Section 303 claim from arbitration, this Court is bound to presume a Section 303 claim arbitrable. *See Mitsubishi*, 473 U.S. at 629.

### 4. It Is Irrelevant Whether This Court Or An Arbitrator Has More Expertise in Adjudicating Section 303 Claims

Plaintiff contends this Court is better suited to decide the merits of Plaintiff's Section 303 claim than an arbitrator because a labor arbitrator does not have expertise in resolving such statutory tort claims. Opp'n at 8. As Defendant points out, the Supreme Court has repeatedly rejected this argument. Reply at 12; *see e.g., Mitsubishi*, 473 U.S. at

633-34; *Gilmer*, 500 U.S. at 30-32. The complexity of an area of law, or the fact that a claim under a particular statute was tradionally heard in a judicial form, does not remove an otherwise arbitrable claim from arbitration. *See Mitsubishi*, 473 U.S. at 633-34. In fact, access to expertise is considered one of the hallmarks of arbitration. *Id.* at 633 ("The anticipated subject matter of the dispute may be taken into account when the arbitrators are appointed, and arbitral rules typically provide for the participation of experts either employed by the parties or appointed by the tribunal.")

Plaintiff has not convinced the Court to stray from the current legal regime, which stresses the "unique and critical role played by arbitration in the context of a collective bargaining agreement." *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 529 (9th Cir. 2016).

## II. Section 301 of the LMRA Also Compels Arbitration of Plaintiff's Claim

Defendant seeks to compel arbitration pursuant to Section 301 of the LMRA, which confers jurisdiction on federal courts to enforce collective bargaining agreements, including agreements to arbitrate. 29 U.S.C.A. § 185; *see Textile Workers*, 353 U.S. at 455. In ruling on an action to compel arbitration under Section 301, a court must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T Techs*, 475 U.S. at 650 (citing *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

In the present case, the Court cannot say "with positive assurance" that the arbitration clause is not susceptible to an interpretation that covers Plaintiff's claim. As discussed above, Plaintiff's claim that it was terminated for an unlawful purpose concerns the application of a number of provisions of the 2011 Agreement. Further, the agreement does not contain any provisions excluding certain grievances from arbitration. In situations such as this, the presumption in favor arbitration is even more applicable. *See AT&T Techs*, 475 U.S. at 650.

**CONCLUSION**

For the reasons states above, the Court GRANTS Defendant's motion to compel arbitration and directs the parties to proceed to arbitration. Pursuant to Section 3 of the Federal Arbitration Act, the Court STAYS the current action pending completion of arbitration. 9 U.S.C.A. § 3. The parties shall file a joint statement within ten days of the arbitrator's decision.

**IT IS SO ORDERED.**

Dated:   10/04/16              _____
                                THELTON E. HENDERSON
                                United States District Judge